Kucera vs. Merrill Lumber Co.

KUCERA, by guardian *ad litem*, Respondent, vs. MERRILL LUMBER COMPANY, Appellant.

*November 29 — December 17, 1895.*

*Master and servant: Injury to minor employee in sawmill: Assumption of risk: Evidence: Instructions to jury: Special verdict: Damages: Loss of time during minority: Waiver of father's rights.*

1. Plaintiff, a boy sixteen years old, employed as oiler in defendant's sawmill, was injured while attending to a hot box by having his hand caught in an unguarded gear wheel which was revolving rapidly close to the farther side of the bridge tree upon which the box rested.     Upon the evidence — showing that he was used to sawmills and was unusually bright and intelligent about machinery, but showing, also, among other things, that his work was performed at night; that his ordinary task was to oil the machinery when not in motion; that the box about which he was engaged was almost out of his reach, so that he had to stand on his tiptoes and steady himself on the bridge tree with one hand while he felt of the box with the other; that the box was in the shadow: and that his duties were such as necessarily to draw his attention to the condition of the box and not to the proximity of the wheel — it cannot be said, as matter of law, that he knew and assumed the risk.

2. Ordinary care was properly defined in such a case to be "such care as boys of his age, intelligence, and experience usually use and exercise under similar circumstances." *Duthie v. Washburn,* 87 Wis. 233, distinguished.

3. Evidence in such case that the light was a considerable distance from the box, and that there was a shadow over the box, was ad-

Kucera vs. Merrill Lumber Co.

missible as part of the *res gestæ* and as bearing on the questions· whether plaintiff assumed the risk and whether defendant was· negligent in not guarding the wheel and in not warning the· plaintiff of the danger, although the complaint did not charge insufficiency of light as a ground of negligence.

4. The special verdict in such a case, in order to sustain a recovery, should include a direct finding of negligence on the part of defendant and that such negligence was the proximate cause of the· injury. A finding that defendant ought to have known that there was danger to a minor employee like the plaintiff, while using ordinary care in performing his duties, getting his hand in the· machinery and being injured, was not sufficient.

5. Under the circumstances of this case the court should, on defendant's request, have submitted in the special verdict a question as· to whether the injury was the result of an accident occurring: without negligence of either party.

6. In an action for personal injuries, an instruction that plaintiff might recover for the pain and suffering which he was "likely to· endure in the future," resulting from the injury, was erroneous.

[7. In an action by a minor for personal injuries, the complaint claimed the value of time lost during minority, and evidence on the subject was not objected to, although there was no proof of emancipation. Plaintiff's father was his guardian *ad litem*, and after the verdict filed a waiver of all rights of action for loss of plaintiff's services during his minority. Whether, under such circumstances, a recovery by the minor for loss of his· time and loss of ability to earn money during his minority could be sustained, is not determined.]

APPEAL from a judgment of the circuit court for Lincoln county: CHAS. V. BARDEEN, Circuit Judge. *Reversed.*

Personal injuries. The plaintiff lost his right hand and a portion of his forearm by being caught in a wheel in the· defendant's sawmill at Merrill, Wis., July 1, 1893, he being at the time employed as a night oiler in the mill. It appeared at the trial that the plaintiff was a boy sixteen years old June 13, 1893, and was at that time five feet three inches. in height. He had been employed about sawmills for parts of four summers. In 1890 and 1891 he had worked carrying· lath. In 1892 he had worked at the slashing table, and

tended the refuse conveyor, and had also done some work upon the log deck. And in the latter part of October, 1892, he began working as oiler, and oiled that season about two weeks. In the season of 1893 he was re-employed as oiler, and began work about the 1st of May. The testimony tended to show that he received no instruction as to the method of performing his duties, except to go and oil. His custom was to oil the mill before it started running in the evening; and again about 9 o'clock, when the mill shut down to change saws; again at midnight, when the mill shut down for supper; again about 3 A. M.,— on all of which occasions the machinery was not running. His duties did not call him near the machinery or gearing when it was running, unless, on his rounds, he found hot boxes, in which case it was his duty to examine and oil such boxes between times, and while the machinery was running. It appears that boxes had heated three or four times during the time plaintiff was employed as oiler.

On the night of the injury it appears that the plaintiff went around and oiled the boxes in the evening before the mill started up, and found one hot box. This box was a box twelve inches long resting on a twelve-inch beam or bridge tree, the top of which was just at the height of the plaintiff's eyes from the floor. In this box revolved a horizontal three-inch steel shaft, which ran squarely across the bridge tree and terminated in a thirty-inch gear wheel upon the other side of the bridge tree, which wheel meshed into another gear wheel, which turned another shaft, at right angles with the shaft first spoken of. This was the box which was hot. There were two oil cups upon it, and there was testimony tending to show that one of the cups was defective, so that the oil would not run through it. After oiling the mill, and after the mill had started running, the plaintiff went back to this box to feel of it and see if it was any better, and finding that it was not, he arranged a pail of water

with a faucet so that water could drop upon it, and then went and told the night foreman about it, who told him to go and watch it close. Thereupon he proceeded with his lantern to examine the box again. He approached the bridge tree on the side opposite from the wheel, placed his lantern upon the floor, held onto the bridge tree with his left hand, and reached up and over with his right hand to feel of the hot box, it being necessary to stand on his toes to reach it. He testifies that he put his hand onto the box, and it was so hot he could not hold his hand on it, and all at once his arm got cut off. The fact is certain that his hand and arm were in some way drawn into the wheel on the other side of the bridge tree, the spokes of which passed within one quarter to one half of an inch of the bridge tree, and which wheel was then making about 400 revolutions a minute. The wheel was unguarded, and there was evidence tending to show that by the rapidity of its revolutions it made a suction of air downward. The negligence which was claimed and relied on by the plaintiff consisted in the failure to guard or fence the wheel, and the failure to warn the plaintiff of the danger.

A special verdict was returned by the jury as follows: "(1) Ought the defendant reasonably to have known or anticipated that there was danger to a workman of the age, understanding, and experience of the plaintiff, while exercising ordinary care in performing the duties of oiler of the machinery in question, getting his hand into the wheel and being injured thereby? *Ans.* Yes. (2) If you answer question No. 1 'Yes,' then was such danger apparent to a person of the age, experience, and understanding of the plaintiff, while engaged in the performance of the duties of oiler in defendant's mill? *A.* No. (3) Did the plaintiff comprehend, or ought he, in the exercise of ordinary care, to have comprehended and appreciated, the risks and dangers incident to the performance of his duties as oiler at the place in ques-

tion? *A.* No. (4) Was the plaintiff, at the time the accident happened, using such care and attention, in the performance of the work he was engaged in, as an ordinary and careful person, of the same age, understanding, and experience, would have used? *A.* Yes. (5) What amount of damages did plaintiff sustain by reason of the alleged injury? *A.* $6,375.

Judgment was entered for the plaintiff upon this verdict, and defendant appealed.

For the appellant there was a brief by *Curtis & Reid*, attorneys, and *Van Dyke & Van Dyke*, of counsel, and a brief in reply signed by *Curtis & Reid*, and oral argument by *A. H. Reid.* They argued, among other things, that if the mere fact that the plaintiff is a minor makes it necessary to submit to the jury the question whether he had sufficient capacity to understand and appreciate the risks, in the face of the uncontradicted testimony of capacity in this case, then every minor who while employed by another is injured in the performance of his duties may recover compensation for that injury, although his employer has exercised the most extraordinary care for his protection. That is not the law. *O'Keefe v. Thorn,* 16 Atl. Rep. 737; *Zurn v. Tetlow,* 134 Pa. St. 213; *Ciriack v. Merchants' W. Co.* 146 Mass. 182; *Buckley v. Gutta Percha & R. Mfg. Co.* 113 N. Y. 540; *Hickey v. Taaffe,* 105 id. 26; *Tinkham v. Sawyer,* 153 Mass. 485; *Mackin v. Alaska R. Co.* 100 Mich. 276; *Coullard v. Tecumseh Mills,* 151 Mass. 85; *Crowley v. Pacific Mills,* 148 id. 228; *Berger v. St. P., M. & M. R. Co.* 39 Minn. 78; *Kelly v. Barber A. Co.* 93 Ky. 363; *Bohn Mfg. Co. v. Erickson,* 55 Fed. Rep. 943; *Palmer v. Harrison,* 57 Mich. 182; *Tucker v. N. Y. C. & H. R. R. Co.* 124 N. Y. 308; *Lofdahl v. M., St. P. & S. S. M. R. Co.* 88 Wis. 421; *Prentiss v. Kent F. Mfg. Co.* 63 Mich. 478; *Townsend v. Langles,* 41 Fed. Rep. 919; *Crown v. Orr,* 140 N. Y. 450; *Probert v.*

*Phipps*, 149 Mass. 258. The fact that the father acted as guardian *ad litem* for the plaintiff did not constitute any waiver of his right to recover for loss of time, etc., during minority, nor did it amount to an emancipation. *Tunnicliffe v. Bay Cities C. R. Co.* 102 Mich. 624; *Texas & Pac. R. Co. v. Morin*, 66 Tex. 225; *Wilton v. Middlesex R. Co.* 125 Mass. 130; *Kavanaugh v. Janesville*, 24 Wis. 618.

For the respondent there was a brief by *M. G. Hoffman* and *Flett & Porter*, and oral argument by *W. H. Flett*. They contended, *inter alia*, that it was a question for the jury whether the plaintiff ought to have known and appreciated the danger. *Chopin v. Badger P. Co.* 83 Wis. 192; *Whalen v. C. & N. W. R. Co.* 75 id. 654; *Luebke v. Berlin M. Works*, 88 id. 448; *Nadau v. White R. L. Co.* 76 id. 120; *Neilon v. Marinette & M. P. Co.* 75 id. 579; *King v. Ford R. L. Co.* 93 Mich. 172; *Cleveland R. M. Co. v. Corrigan*, 3 L. R. A. 385, note; *Thompson v. Johnston Bros. Co.* 86 Wis. 576; *Chicago D. F. & F. Co. v. Van Dam*, 149 Ill. 337; *Hinckley v. Horazdowsky*, 133 Ill. 359; *Emma C. S. O. Co. v. Hale*, 56 Ark. 232; Beach, Contrib. Neg. (2d ed.), § 362, and note 3, p. 469. Ordinary care as applied to a minor is only such a degree of care as may reasonably be expected of him, considering his age, intelligence, and experience, in view of all his surroundings. Beach, Contrib. Neg. (2d ed.), §§ 136, 204, and cases cited; Shearm. & Redf. Neg. § 73; Whittaker's Smith, Neg. (1st Am. ed.), 411; Sackett, Inst. to Juries, 416, 417; *Wright v. D., G. H. & M. R. Co.* 77 Mich. 123, and cases cited; *Hemmingway v. C., M. & St. P R. Co.* 72 Wis. 42, 50; *Meibus v. Dodge*, 38 id. 300, 306. Plaintiff's father had not only in fact emancipated him, but by the pleadings, records, and proceedings voluntarily waived his right to recover for the loss of his services during minority. *Baker v. F. & P. M. R. Co.* 16 L. R. A. 154; *Abeles v. Bransfield*, 19 Kan. 16, 20; *Boynton v. Clay*, 58 Me. 236; *Scott v. White*, 71 Ill. 287.

WINSLOW, J.   The broad claim is made that the evidence in the case shows, as matter of law, that the plaintiff knew, or ought to have known and appreciated, the risk, and hence that the motion to direct a verdict for the defendant should have been granted.   We are unable to agree with this contention.   While it is a fact that the wheel was in plain sight, and also that any person must have known that if his arm got into it he would be seriously injured, still we cannot say, as matter of law, that a boy of the plaintiff's age must be held to have known and appreciated the danger attending his work about the box or bearing. *Chopin v. Badger P. Co.* 83 Wis. 192.   It is true that the evidence showed the plaintiff to have been used to sawmills and unusually bright and intelligent about machinery, but it also showed that his work was performed at night; that his ordinary task was to oil the machinery when not in motion; that the box about which he was engaged was almost out of his reach, so that he had to stand on his tiptoes and steady himself on the bridge tree with one hand, while he felt of the box with the other; that the box was in the shadow; and that his duties were such as to necessarily direct his attention to the condition of the box and not to the proximity of the wheel.   Under all these circumstances, we decline to say, as matter of law, that a boy sixteen years of age must be held to have assumed the risk.

It is also claimed that the circuit court erred in defining ordinary care.   The court charged the jury that ordinary care, in this case, is " such care as boys of his age, intelligence, and experience usually use and exercise under similar circumstances."   This is very clearly correct.   The standard or test of ordinary care which is applied to adults is not the standard to be applied to minors. *Hemmingway v. C., M. & St. P. R. Co.* 72 Wis. 42; *Whalen v. C. & N. W. R. Co.* 75 Wis. 654.   The case of *Duthie v. Washburn*, 87 Wis. 233, was the case of an adult, and what is there said as to ordinary care must be construed in the light of that fact.

Kucera vs. Merrill Lumber Co.

Evidence was admitted, against defendant's objection, tending to show that the light was a considerable distance from the box, and that there was a shadow over the box, and this is claimed to be error because the complaint does not charge insufficiency of light as a ground of negligence. The evidence was clearly admissible as a part of the *res gestæ*, and as a fact properly to be considered in determining whether plaintiff assumed the risk, and whether defendant was negligent in not guarding the wheel and in not warning the plaintiff of danger. These were the only purposes for which the evidence was used, and there was consequently no error.

There are, however, errors in the case which necessitate reversal.

1. There is no direct finding, in the verdict, of negligence on the part of the defendant, nor that such negligence was the proximate cause of the plaintiff's injury. There should be such a finding in order to justify the recovery. The facts are undisputed that the wheel was not guarded or fenced, that the plaintiff received no warning, and that his arm was taken off in the wheel. Therefore it was unnecessary to include any of these facts in the verdict. It was necessary, however, that the verdict should find that the negligence of the defendant was the proximate cause of the injury, and it does not so find. The first question is the only one bearing on the subject, and that only finds that the defendant ought to have known that there was danger to a minor workman like the plaintiff, while using ordinary care in performing his duties, getting his hand in the machinery and being injured. This does not find, as matter of fact, that there was any danger, nor does it find that it was danger that called for fencing of the machinery, under S. & B. Ann. Stats. sec. 1636*f*, or for warning or instruction to the plaintiff. As an abstract question there is some danger in the use of any powerful machinery driven by steam, but it must be such danger as it is negligent not to guard or warn against in order to make it a ground for recovery. We are uninformed

by this verdict (1) whether there was any actionable negligence; (2) if so, whether it was the lack of a guard, or the failure to warn the plaintiff, or both; and (3) whether such negligence was the proximate cause of the injury.  Bearing on this point, a question was submitted by the defendant, to be incorporated in the special verdict, as to whether the injury was the result of an accident occurring without the negligence of either party.  We think this was a proper question, under the circumstances of the case, it appearing from the plaintiff's own evidence that he could not tell how it was done.

2. The court charged the jury that the plaintiff might recover for the pain and suffering which he was "likely to endure in the future," resulting from the injury.  This was error.  *Hardy v. Milwaukee St. R. Co.* 89 Wis. 183.

3. The plaintiff was allowed to recover damages for the value of his time lost during his minority, and for his loss of ability to earn money during his minority.  There was no evidence in the case of emancipation.  This question does not seem to have been raised or discussed until after the charge to the jury.  The complaint claimed the value of time lost during minority, and evidence on the subject was not objected to.  The plaintiff's father is the guardian *ad litem* in this case, and after the verdict the plaintiff's attorneys filed in court a waiver of all rights of action for loss of services during plaintiff's minority, signed by them on behalf of the father.  Upon these facts the circuit court held that the father had waived his claim to these damages and practically conferred his rights upon the plaintiff.  There are authorities sustaining the action of the court.  *Baker v. F. & P. M. R. Co.* 91 Mich. 298, 16 L. R. A. 154; *Abeles v. Bransfield,* 19 Kan. 16; *Scott v. White,* 71 Ill. 287.  The argument in favor of upholding such a judgment, on the ground that the father, by actively assisting in the prosecution of the claim, will be afterwards estopped from mak-

ing the same claim himself, seems strong.    However, as this judgment must be reversed for reasons before given, and as the question seems unlikely to arise on a new trial, we do not deem it necessary to decide it.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

